*In re* BURG'S ESTATE.

1. WORK AND LABOR—AUNT AND NEPHEW—SERVICES RENDERED.
     Instruction to jury on appeal from disallowance of nephew's
     claim for services, rendered in general management of aunt's
     business over a period of 13 years, against her estate, based
     on alleged implied contract, that if claimant expected to receive
     pay for such services and decedent expected to pay for them
     then claimant was entitled to receive whatever the services
     were reasonably worth *held*, proper.

2. EXECUTORS AND ADMINISTRATORS—CLAIM FOR SERVICES—QUESTION
     FOR JURY.
     Whether or not aunt, with whom claimant, a nephew, did not live
     in a family relationship, had an intention to recompense him
     for his services in connection with advising and superintending
     her financial and property affairs over a period of some 13
     years *held*, an issue for jury under record presented.

3. WORK AND LABOR—AMOUNT OF RECOVERY—EVIDENCE.
     Verdict of $10,000 for claimant against estate of aunt for serv-
     ices rendered over a period of 13 years and for which he
     claimed $30,000 *held*, reversible error where sole evidence as to
     value of such services was an affirmative answer to general
     question as to whether amount claimed was reasonable and no
     attempt was made to separate items of service and afford a
     basis for a verdict of less than full amount of claim.

     WIEST, BUTZEL, and POTTER, JJ., dissenting as to new trial.

Appeal from Washtenaw; Sample (George W.), J.
Submitted October 12, 1937. (Docket No. 101, Cal-
endar No. 39,511.) Decided December 14, 1937.

In the matter of the estate of Lucetta Burg, de-
ceased, Grover F. Burg filed his claim for services
performed for deceased. Claim disallowed by com-
missioners on claims. Claimant appealed to circuit

court.  Charles Burg intervened.  Verdict and judgment for claimant.  George J. Geisel, administrator, and intervener appeal.  Reversed, with a new trial.

*Frank B. DeVine,* for claimant.

*Arch D. Wilson,* for administrator.

*Roscoe O. Bonisteel,* for intervener.

Fead, C. J.  Lucetta Burg died September 18, 1934, survived by a brother, Charles, and a deceased brother's children, five sons and a daughter.  Her estate inventoried about $73,000 and included bank certificates of deposit, aggregating over $50,000 and a note of her nephew, Grover F. Burg, claimant, for $4,500, dated May 2, 1929 and including interest indorsed thereon as paid to May 2, 1934.

Grover filed a claim against Lucetta's estate for services performed from 1921 to the time of Lucetta's death, consisting generally of making funeral arrangements for members of the family who had predeceased Lucetta, attendance on them during sickness, attendance on Lucetta in sickness and accident, and for general management of business for Lucetta, such as cashing checks, renewing certificates of deposit, overseeing repairs on buildings and premises and the like.  His claim was $30,000.

Grover was a building contractor living in Ann Arbor, and Lucetta lived at Saline.  Grover made many trips to Saline at her request.  The testimony is ample that Lucetta often asked Grover to do things for her, she entrusted some negotiations to him, although she made the final decisions, and she relied upon him greatly for advice and for taking care of business transactions, sometimes merely by

way of running errands and sometimes using his experience in making repairs and improvements. Some 35 witnesses testified to different transactions and to the work Grover did, not so much by way of manual labor as by oversight and supervision.

It is not claimed that there was an express contract of hire. Claimant relies upon an implied contract.

The testimony to sustain the claim that Lucetta intended to pay for Grover's services was as follows:

Mrs. Clarkson, a disinterested witness, testified that Lucetta told her: "Grover is going to lose nothing by all he does for me," but "she didn't say anything about paying him for anything he had done or was doing;" John Burg, brother of Grover, who also had done work for Lucetta, and who had filed a claim against her estate for services, said: "She made several remarks that he would be well paid * * * for his services;" and Mary Burg, wife of John, testified: "She told in my own house last summer, she said 'You boys are going to be well paid,' and she told me 'I don't want your husband to work as hard as he is. He is going to be well paid and he won't have to work;' " Mary did not say Grover was present at that conversation.

Does this testimony present a jury question of implied contract?

The court submitted the issue to the jury in a charge which fully set up the presumption of gratuitous service arising out of relationship by blood, the disfavor in which such claims are viewed by the law, etc., and by apt language restricted the issue specifically to the elements of implied contract. A characteristic instruction was:

"In a nutshell, the law of this case is this: If you find from the testimony that at the time these services were rendered, Grover F. Burg expected to receive pay for them and Lucetta Burg expected to pay for them, then he is entitled to receive whatever the services were reasonably worth."

This test is sustained by 71 C. J. pp. 41, 42, and 78; *Maynard* v. *Schrumpf's Estate,* 192 Mich. 494; *Middlebrook* v. *Slocum,* 152 Mich. 286; *In re Knox's Estate,* 220 Mich. 469.

In *McInerney* v. *Detroit Trust Co.,* 279 Mich. 42, relied on by executor and intervener the case evidently was tried before the court without a jury and recovery was denied because the claimed admissions as to compensation for services were no more than declarations of testamentary intention.

In the case at bar Lucetta and Grover did not live together in a family relationship; she frequently called upon him to perform services of various sorts; while some of those for which he makes claim obviously were not of a class for which compensation could have been intended or expected, others were of a sort that the court would not be justified in holding as a matter of law that there could have been no intention to pay or receive payment for them; and the declarations of Lucetta as to compensating Grover were not sufficiently definitely of testamentary intention as to compel the inference that she intended to recompense him in a will. On the whole record and the authorities above cited, the issue was for the jury.

The only evidence of the value of the services rendered by Grover was his affirmative answer to a general question whether the amount charged in his filed claim was reasonable, *i. e.* $30,000. He made no

attempt to separate the items of service or charges and thereby afford a basis for a verdict of less than the full amount of his claim. The jury returned a verdict of $10,000 for Grover. There having been no testimony of the value of the different kinds of service and of the time spent upon the items, the verdict could have been reached only by guessing or speculation on the part of the jury. This error requires reversal of the judgment.

Other points are raised but they are not likely to arise upon a new trial and need no discussion.

Judgment reversed and new trial ordered, with costs.

North, Bushnell, Sharpe, and Chandler, JJ., concurred with Fead, C. J.

Wiest, J. (*dissenting as to new trial*). I think there should be reversal without a new trial.

The testimony relative to what the aunt said to third parties, in casual conversations, will not support a finding of a contract relation.

The claim of $30,000 for services over a period of 13 years, during which time claimant borrowed from his alleged debtor $4,500 and gave her his note, secured by a mortgage, is inconsistent to say the least. Claimant gave the note and mortgage to his asserted debtor in 1929, and now claims that, at that time, she owed him for eight years services for which he expected pay and she so understood. His aunt paid him a commission on the sale of some real estate.

The aunt died intestate September 18, 1934, leaving as her heirs at law a brother and five nephews, including claimant, and one niece, children of a deceased brother. The estate holds the mentioned note

and mortgage. The estate was sizable and in dying intestate the aunt left him, as an heir at law, a share therein which squares with her statements that "Grover is going to lose nothing by all he does for me," and "he would be well paid  *   *   *   for his services."

Butzel and Potter, JJ., concurred with Wiest, J.