## *In re* THOMPSON'S ESTATE.

### CLAIM OF OLDS.

WORK AND LABOR—FOSTER RELATIONS—SEPARATE HOME—LIMITATION OF ACTIONS.

> Recovery for services rendered by claimant against estate of man who had not adopted claimant but had stood in the relation of foster father to claimant is confined to value of services rendered within six years prior to death of decedent where such services as so limited were performed by claimant after he had married and established a home elsewhere (3 Comp. Laws 1929, § 13976).

CHANDLER, WIEST, and BUTZEL, JJ., dissenting.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted January 8, 1941. (Docket No. 23, Calendar No. 41,315.) Decided May 21, 1941.

In the matter of the estate of Ulysses Thompson. Roy J. Olds presented his claim for services. From order allowing claim, Robert Thompson, administrator, appeals. Remanded with directions.

*Roland O. Kern,* for claimant.

*Timothy C. Quinn (Neithercut & Neithercut,* of counsel), for appellant.

SHARPE, C. J. Ulysses Thompson died August 25, 1939. At the time of his death he was the owner of a farm in Tuscola county, Michigan. He left no will, but proceedings for the probate of his estate were begun in the probate court of Tuscola county. Roy J. Olds presented a claim against the estate as follows:

"For services rendered and money furnished to said deceased at his request and on his promise to pay for such services and money so rendered and furnished, in, upon and about the farm lands, business and home of said deceased, from the fall of 1906 to the date of said decedent's death. $7,664.10.

"In the event of claimant's inability to prove the express contract aforesaid then claimant will base his demand upon decedent's implied promise to pay claimant the reasonable value of said services and money, with interest thereon, a bill of particulars whereof is hereto attached and marked Exhibit A. $7,664.10."

An itemized statement was filed showing a claim for services from 1907 to and including 1939 with the exception of the years 1922 and 1927. The total amount claimed was the sum of $7,664.10.

Upon appeal to the circuit court the trial judge allowed the claim in the amount of $2,500.

The material facts are not in dispute. The claimant, Roy J. Olds, came to the Thompson home about the year 1904 at the age of 14 or 15. Olds lived with and worked for Thompson from 1907 through 1921 with the exception of some months in 1918 and 1919 during the World War and for some months in 1921. He was not paid like a hired man, but received clothes and spending money. He married about 1921 and from then on made his home elsewhere, but continued to help Thompson with his farm work until Thompson's death in 1939.

In addition to the clothes and spending money, claimant also received the sum of $50 per year for 14 years and an additional sum of $1,000 about the time of his marriage. Five disinterested witnesses testified in behalf of claimant that Thompson had told them that Roy was to get the 40 acres of land when Thompson died. One of these statements made by Thompson was in the presence of claimant and all witnesses testified as to the high esteem in which claimant was held by deceased.

The administrator of the estate appeals from the allowance of the claim and contends that there was no express contract between claimant and Thompson to pay for the services rendered. We are in accord with this claim. The record is barren of any testimony showing an express contract between claimant and Thompson that the services performed by claimant were in consideration of a promise that he would receive the farm upon the death of Thompson.

It is urged by claimant that recovery may be had upon an implied contract, but the administrator urges that there may not be an implied contract where the parties stand in the relationship of father

and son; and that services rendered by a member of a household are presumed to be gratuitous and no recovery can be had in the absence of an express contract. It is conceded that claimant was not in any way related to deceased and after 1921 did not make his home with decedent.

"The courts regard with suspicion and disfavor claims brought against an estate for personal services rendered by relatives, especially where the latter are members of decedent's immediate family or household, as the presumption is that such services between persons occupying such relations are intended to be gratuitous, and hence claims against the estate of a decedent made by near relatives for personal services require stronger proof to establish them than ordinary claims by strangers. The rule applies when the family relationship actually existed between claimant and decedent, although there was neither consanguinity, affinity, nor adoption." 24 C. J. pp. 281, 282.

See, also, *In re Pierson's Estate,* 282 Mich. 411.
In *Harris* v. *Smith,* 79 Mich. 54 (6 L. R. A. 702), we said:

"Where the services are rendered to one standing *in loco parentis,* there is no implied promise to pay for them, though such presumption may be overcome by the facts and circumstances of the case."

In the case at bar, a family relationship existed between claimant and decedent up to the time of claimant's marriage and any services performed by him up to that date are presumed to be gratuitous. There is no evidence in the record supporting a contrary view, but about 1921 claimant married and made a home elsewhere. At that time claimant received $1,000 from decedent and also

had received $700 representing 14 years of services at $50 per year. It appears to us that the marriage of claimant and his living elsewhere ended the family relationship and the presumption of services rendered gratuitously no longer exists.

In *Miller* v. *Stevens,* 224 Mich. 626, 632, we said:

"A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated, and although there be no express stipulation between the parties for wages or price the law implies an understanding or intent to pay the value of the services rendered."

In *Re Abel's Estate,* 173 Mich. 93, 105, we said:

"If the facts and circumstances attending the performance of the work and in its acceptance are sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable."

See, also, *In re Burg's Estate,* 282 Mich. 304.

In the case at bar the facts and circumstances are such as would warrant the finding of an implied contract to pay for such services after the family relationship ceased to exist. The administrator contends that the statute of limitations (3 Comp. Laws 1929, § 13976 [Stat. Ann. § 27.605]) bars claimant from receiving compensation for services rendered before a period of six years prior to the death

of decedent; and limits him to receiving an amount not in excess of $480.

In the case at bar there were statements made by Ulysses Thompson to the effect that the 40 acres were to become the property of claimant upon Thompson's death, but there is not evidence that these statements were communicated to claimant or that claimant relied upon them. The lack of such evidence prevents the formation of an express contract, but we think the facts and circumstances in this case show that services were performed and that deceased intended to pay for them. An implied contract to pay for such services must be limited to a period of six years next preceding the death of Thompson. The claim allowed by the trial court covered a period of time much longer than that prescribed by the statute of limitations; in this there was error.

The cause is remanded to the trial court to find the value of services rendered, if any, within the limits prescribed by this opinion. Appellant may recover costs.

BUSHNELL, BOYLES, and NORTH, JJ., concurred with SHARPE, C. J. McALLISTER, J., concurred in the result.

WIEST, J. (*dissenting*). In 1905, Roy J. Olds, then 15 years of age, became a member of the family of Ulysses Thompson, a farmer, and the relation of foster father and mother and child obtained. After his marriage in 1921, Mr. Olds resided in Flint. Mr. Thompson died in 1939, his wife having predeceased him. In 1940, Mr. Olds presented a claim against Mr. Thompson's estate for claimed services, rendered from 1907 to the date of Mr.

Thompson's death, amounting to $7,664.10.   Averring a promise on the part of Mr. Thompson to pay him for such services Mr. Olds alleged:

"In the event of claimant's inability to prove the express contract aforesaid then claimant will base his demand upon decedent's implied promise to pay claimant the reasonable value of said services."

In the claim, as filed, credit was given for $50 per year for 14 years and for $1,000 in 1921.

In the probate court the claim was allowed at $500, and claimant appealed to the circuit court. In the circuit court, upon trial without a jury, the claim was allowed at $2,500, and review here is by the estate.

When plaintiff married he was given $1,000. There was no evidence of express hiring or promise to pay, and the circumstances under which services were rendered and the nature thereof after claimant married and established a home of his own negative an implied promise to pay.  The claim for services, rendered previous to claimant's marriage, was barred by the statute of limitations.   After claimant's marriage, while his foster mother was on her deathbed and house help was needed he sought to obtain such help and carried several to the farm in his car and, when they would not remain out in the country, he carried them back to the city of Flint.  This was an exhibition of care and solicitude for his foster mother and should not now be degraded to the sordid level of doing the same for expected pay and, under the circumstances, Mr. Thompson should have been cognizant of such mercenary motive and, therefore, expected to pay for such otherwise evidence of gratitude.

Undoubtedly, claimant was helpful to his foster parents, but there is no evidence that he expected

pay for his kindness or that either of his foster parents understood that he was actuated by mercenary motives and they were expected to pay for kindly acts.

The fact that Mr. Thompson, on one or more occasions, remarked to others that he intended claimant should have 40 acres of land did not constitute any foundation upon which to build an implied contract or promise to pay money for services rendered. Such an intention cannot be turned into an implied promise to otherwise pay him as for hire.

The fact that Mr. Olds remained at this home until the time of his marriage is evidence that the tie was not expectancy of wages or thought of making a claim as here presented. It was something nobler. It was in appreciation of what that home meant to him. Casual remarks of intended future bounty are no evidence of a contract for hire, express or implied.

The judgment in the circuit court should be reversed and judgment entered therein in favor of the estate, with costs to the estate.

CHANDLER and BUTZEL, JJ., concurred with WIEST, J.