### DeCAIRE v. BISHOP'S ESTATE.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED —WITHDRAWAL OF OBJECTIONS.

    Testimony of claimant against estate of deceased, presented at hearing on her claim for services and material furnished him over period of several years before his death, may properly be considered in determining whether or not claimant established an implied contract, where although objection was initially raised that such testimony was inadmissible as equally within the knowledge of the deceased, such objection was withdrawn at the conclusion of the hearing (CL 1948, § 617.65).

2. CONTRACTS—EXPRESS CONTRACT—EVIDENCE—IMPLIED CONTRACT.

    Plaintiff failed to establish an express agreement between herself and decedent that for a consideration agreed to be paid, plaintiff would and did render to decedent the services for which her claim was filed, although it was sufficient to prove an implied contract, where it shows she expected payment therefor and that decedent had made repeated statements indicating that he intended to compensate her.

3. ESTATES OF DECEDENTS—CLAIM FOR PERSONAL SERVICES—IMPLIED CONTRACTS.

    A claim against the estate of a decedent for housekeeping and other personal services rendered deceased may be established by proof of an implied contract.

---

REFERENCES FOR POINTS IN HEADNOTES
[2–5] 58 Am Jur, Work and Labor, §§ 6, 60.
[3] 21 Am Jur, Executors and Administrators, § 327.

4. Contracts—Implied Contracts.

> A contract implied in fact arises from the acceptance of beneficial services for which compensation would ordinarily have been paid.

5. Estates of Decedents—Rendition of Personal Services—Presumptions as to Compensation—Relationship of Claimant and Deceased.

> No presumption arises that personal services were rendered and expenditures made by claimant against estate of deceased, were without expectation of compensation, where there was no relationship by blood or marriage between deceased and claimant.

6. Appeal and Error—Estates of Decedents—Claim for Personal Services—Questions Reviewable—Disallowance of Claim Paid for by Deceased.

> Reasonableness of plaintiff's claims for personal services rendered to, and expenditures made for, deceased is not considered on appeal from order disallowing the claim, where the issue is not raised but one small item is disallowed in view of claimant's testimony that deceased had given her money therefor.

Appeal from Wayne; Brennan (John V.), J. Submitted April 5, 1951. (Docket No. 33, Calendar No. 45,031.) Decided May 14, 1951.

Frieda DeCaire presented her claim for services against the estate of Emerson Bishop, deceased. Claim denied in probate court and in circuit court on appeal. Plaintiff appeals. Reversed and remanded.

*James G. McHenry* (*Charles F. Delbridge,* of counsel), for plaintiff.

*Dexter & McInally,* for defendant.

North, J. Plaintiff filed a claim in the amount of $2,292.37 against the estate of Emerson Bishop, deceased. It was disallowed in the probate court and also disallowed on appeal to the circuit court. Plain-

tiff has appealed. The items of her claim, filed in October, 1949, appear as follows:

| | |
|---|---:|
| Services in managing and caring for real property owned by deceased, and collecting the rents from September, 1945, to July, 1949, at $12 per month | $ 552.00 |
| Food, special items furnished incident to decedent's diet | 3.60 |
| Sheets and blankets | 16.77 |
| Washing, ironing and mending—September, 1945, to July, 1949, at $5 per week | 860.00 |
| Care of third floor of flat, occupied by Bishop, at $5 per week | 860.00 |
| | $2,292.37 |

Emerson Bishop died testate about the middle of 1949 leaving an estate of about $25,000, of which his will made complete disposal. He made no provision for plaintiff, who was not related to him by blood or marriage, although plaintiff testified she and Bishop had contemplated marriage. While none of the items which plaintiff claims should be allowed accrued prior to 1945, the record discloses that for approximately 20 years prior to 1945 decedent had roomed and boarded in plaintiff's house. In 1945, decedent purchased property adjacent to plaintiff's residence. He occupied one of the flats in the property he had purchased until January, 1949, when he went to reside with his daughter. After Bishop took up his abode in his own property in 1945, he still continued to spend most of his time in plaintiff's home. He boarded there, but plaintiff admits she was paid for decedent's board, and she claims nothing therefor, except as to certain items noted in her claim which items were necessitated because of decedent being on a special diet. Obviously plaintiff's claim for services rendered to or in behalf of decedent in the way of managing real property which he owned, collecting

rents, doing washing, ironing and mending for him, extended into the period after decedent went to reside with his daughter. Further facts and circumstances will be noted later herein which bear upon the issue of whether plaintiff's proofs established either an express or implied contract, as is asserted in her behalf.

Briefly, the decision in the probate court disallowing plaintiff's claim and a like decision on her appeal to the circuit court was in each instance based upon a determination that the testimony offered in behalf of plaintiff did not establish either an express or implied contract. The following is from the opinion rendered by the circuit judge:

"Several portions of claimant's testimony are inadmissible under the statute [as to matters equally within the knowledge of the deceased]. * * * The record is equally consistent with the idea that all services during the entire period were paid for, as that Mr. Bishop owed her [plaintiff] anything for such services at the time of his death. Their relationship, in every way, always appeared to be mutually amicable, each one doing his or her full share towards the helpful care of the other. Claimant's disappointment in not being named in the will is understandable, but neither expectation nor disappointment, in the absence of a contract relationship, either express or implied, is sufficient to support a claim against the estate. * * * These claims, according to the record, rest in expectation and not in fact sufficient to support a contract either express or implied. * * *

"As heretofore indicated, the issue in this case is one of law, namely, was there an implied contract for payment of services as alleged by the claimant?

"Viewing all of the admissible testimony in the record presented to the court, I am of opinion * * * that there was no contract either express or implied between the claimant and the deceased."

On this appeal the problem for consideration is whether the circuit judge was in error in the conclusion he reached. If so, it seems to appear that the error was due to his conclusion that plaintiff's testimony, being equally within the knowledge of the deceased,* was inadmissible. The scope of our inquiry and consideration can be restricted to determination of whether or not the record, which was made before the referee when the case was pending in the probate court, a transcribed copy of which was used to submit the case in the circuit court, did establish an *implied contract* that plaintiff would be compensated for the items set forth in her claim. Consideration can be so restricted because, while initially an objection was made to plaintiff testifying as to matters equally within the knowledge of the deceased, at the close of the proofs, no witnesses having been produced in behalf of defendant, the following occurred:

"*Mr. McInally* (attorney for defendant): I am not prepared to put in any testimony, although it doesn't seem to me as a matter of law he has met the requirements of the law and I would ask that the claim be disallowed. I am prepared to give you some cases. * * * At this time I will ask permission to withdraw objections to the claimant's testimony, so you are at liberty to consider that testimony.

"*The Referee:* About equally within the knowledge?

"*Mr. McInally:* Yes."

Further, in the brief of defendant it is said, "we formally withdrew our objections to her testimony at the conclusion of the hearing." Our review of the record brings the conclusion that plaintiff's proofs did not establish an express contract. That is, the testimony does not disclose that as to plaintiff's

---

* See CL 1948, § 617.65 (Stat Ann § 27.914).—Reporter.

claim, or any of the items thereof, there was an express agreement that for a consideration agreed to be paid, plaintiff would and did render to decedent the services for which her claim was filed.

However, our consideration of the whole record, including the testimony of plaintiff as well as that of witnesses sworn in her behalf, brings the conclusion that an implied contract was proven. We are mindful that plaintiff testified she did not keep a record of her charges; that she did not assert a claim against him or render a bill to Mr. Bishop during his lifetime; that she borrowed $40 of Bishop which was not repaid at the time of his death; but she also testified that on various occasions decedent made statements to her of the following character: "He always told me not to worry—I'd be taken care of;" and "Well, because he always told me—he said, 'Don't worry about it. I will see that you get paid for all of that.'" Concerning her testimony just quoted, plaintiff on cross-examination was asked:

"*Q.* By that you meant in the will?

"*A.* That is right.

"*Q.* When did you first decide to file a claim against the estate?

"*A.* When I found out that he left me out of the will."

One of plaintiff's witnesses testified, "quite a few times I heard Mr. Bishop saying, 'Well, Frieda, never mind * * * you just mark that all down. Someday * * * you will be well paid.'" Others of plaintiff's witnesses gave testimony of like character. And, aside from plaintiff's testimony, other witnesses in her behalf testified that plaintiff rendered to decedent the various services which constitute her claim. The testimony justifies the conclusion not only that the services were in fact rendered, but that plaintiff expected she would be compensated therefor; and

repeated statements of decedent made to plaintiff not only justified her in expecting she would be compensated, but also indicated that decedent intended she would be compensated for services rendered to him.

In many cases of this character we have held it is not essential to allowance of a claim that an express contract should be proven; and we have so held even in cases where a family relation existed between claimant and decedent.

"It is not essential to a recovery by a child for services rendered to a parent that a formal contract be established in relation thereto; but if the facts and circumstances attending the performance of the work and in its acceptance are sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable." *In re Abel's Estate,* 173 Mich 93, 105.

To the same effect, see *Harris* v. *Smith,* 79 Mich 54 (6 LRA 702); *Sammon* v. *Wood,* 107 Mich 506; *Maynard* v. *Schrumpf's Estate,* 192 Mich 494; *In re Thompson's Estate,* 297 Mich 479; and *In re Parks' Estate,* 326 Mich 169. In this last cited case one of the headnotes reads:

"Where parties to an alleged implied contract for nursing care and housework occupy a family relation, the presumption that the furnishing of such service was done gratuitously is rebutted by a showing that when the services were rendered the party rendering them expected to receive, and the party for whom they were rendered expected to pay, wages therefor."

There are numerous other cases in this jurisdiction in which it is held that liability for payment of a claim of the character herein involved may be estab-

lished by proof of an implied contract. See *In re Johnson's Estate,* 160 Mich 585; *In re Pierson's Estate,* 282 Mich 411; *In re Snow's Estate,* 321 Mich 127; and *In re Mazurkiewicz's Estate,* 328 Mich 120, in which a headnote reads:

"A contract implied in fact arises from the acceptance of beneficial services for which compensation would ordinarily have been paid."

"Where there is no relationship by blood or marriage between deceased and claimant against her estate, no presumption arises that the services rendered, and expenditures made, by such claimant were without expectation of compensation therefor." *In re Jorgenson's Estate* (syllabus), 321 Mich 594.

There is a dearth of proof as to the reasonableness in the amounts at which the respective items of plaintiff's claim should be allowed; but that issue has not been raised or argued on this appeal, and we do not consider or base our decision herein on that phase of the record. However, the amount of plaintiff's claim as filed ($2,292.37) should be reduced by disallowance of the item for sheets and blankets amounting to $16.77, because plaintiff testified: "He gave me money for the sheets and a couple of blankets."

We conclude that under the record in this case plaintiff's claim in the amount of $2,275.60 should be allowed; and it is ordered that the case be remanded to the circuit court for the entry of judgment allowing plaintiff's claim in the amount of $2,275.60; and for certification of such allowance by the circuit court to the probate court. Plaintiff will have costs in both the circuit court and this Court.

REID, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred with NORTH, J. BOYLES, J., concurred in the result.