*In re* OVERSMITH'S ESTATE.

CLAIM OF SUTTON.

1. APPEAL AND ERROR—MOTION TO DISMISS—EVIDENCE—CREDIBILITY OF WITNESSES—WEIGHT OF EVIDENCE.
   Testimony is examined in the light most favorable to claimant against estate of decedent in reviewing an order granting the defendant's motion to dismiss but the credibility of witnesses and the weight to be given their testimony are proper matters for determination by the trier of the facts and reversal by the Supreme Court is not ordered unless the evidence clearly preponderates in the opposite direction.

2. CONTRACTS—IMPLIED CONTRACTS—EVIDENCE.
   Evidence did not sustain a finding of an implied contract for housekeeping and laundry services as claimed by plaintiff against estate of decedent.

   SHARPE and DETHMERS, JJ., dissenting.

Appeal from Lapeer; Quinn (Timothy C.), J. Submitted April 8, 1954. (Docket No. 46, Calendar No. 46,064.) Decided June 7, 1954. Rehearing denied September 8, 1954.

Margaret Sutton presented her claim against the estate of Bert Oversmith for services. Denied in

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading § 332; 3 Am Jur, Appeal and Error § 890.
[2] 12 Am Jur, Contracts §§ 4, 5.

probate court. Appeal to circuit court dismissed. Plaintiff appeals. Affirmed.

*Smith & Smith* (*Herbert W. Smith*, of counsel), for plaintiff.

*Thomas C. Taylor*, for defendant.

Bushnell, J. This is an appeal from the denial of Margaret Sutton's claim against the estate of Bert Oversmith, deceased, for services rendered to him from September, 1938 to November, 1950. The claim was disallowed in the probate court and the order of disallowance was affirmed in the circuit court. A motion for a new trial and a subsequent motion for a partial new trial were denied.

Claimant's husband, Alfred Sutton, testified that in September of 1938, Oversmith came to the Sutton home and asked Mrs. Sutton if she would take care of his wife, Imogene, who was ill. Mrs. Sutton could not accede to his request and he was urged to look elsewhere. He returned the next day stating that he could not find anyone. Mrs. Sutton then agreed to go to the Oversmith home and help as best she could while he was looking for someone else. Sutton testified that thereafter his wife worked "full time" for a period of 96 weeks, and subsequently 1 day a week in addition to taking the Oversmith washing home every other week, and that such services continued until September of 1950.

Mrs. Oversmith died in 1940, and in 1944 Sutton's mother, Myra, became Oversmith's housekeeper. In 1945, Myra Sutton, claimant's mother-in-law, married Bert Oversmith.

A Mrs. Hathaway had been employed intermittently at the Oversmith farm as housekeeper, beginning in 1941, and the testimony shows that another housekeeper was also employed for a short time. From

June of 1949 until November of 1950, although Mrs. Sutton continued to do some housework and washing for Oversmith, she was a full-time employee (40 hours a week) of the Michigan State Home & Training School at Lapeer.

The "statement and proof of claim" has in it an item for services from "November 1, 1948 to November, 1950, three days a week, 104 weeks at $2 per day." This statement is in direct contradiction to the testimony. Claimant's witness, Emma Traver, a neighbor, testified that she and her mother took care of Mrs. Oversmith for about a week prior to Mrs. Sutton's arrival, and that she had seen Mrs. Sutton several times at the Oversmith farm. Upon cross-examination, however, this witness was unable to verify that Mrs. Sutton was present during the 3 years that Mrs. Hathaway was engaged as a housekeeper.

The trial court, in granting appellee's motion to dismiss, was of the opinion that Mrs. Sutton had not sustained the burden of proof imposed upon her.

Claims of the character involved here have been sustained upon proof of an implied contract. *In re Thompson's Estate,* 297 Mich 479; *In re Snow's Estate,* 321 Mich 127; *In re Mazurkiewicz's Estate,* 328 Mich 120; *DeCaire* v. *Bishop's Estate,* 330 Mich 378.

In reviewing the order granting defendant's motion to dismiss, we have examined the testimony in the light most favorable to claimant. Nevertheless, the credibility of witnesses and the weight to be given their testimony are proper matters for determination by the trier of facts. Where the court sits without a jury, as was the situation here, "we do not reverse unless the evidence clearly preponderates in the opposite direction." *In re Showers' Estate,* 321 Mich 147.

Our view is in accord with the statement of the trial judge, who, in denying claimant's motion for new trial, said:

"As to the judgment being contrary to law, that part of the claim which is prior to October 26, 1945, is clearly barred by the statute of limitations. *In re Thompson's Estate,* 297 Mich 479. In 1945, decedent married the mother (mother-in-law [*sic?*]) of claimant, and services rendered after this marriage are presumed to be gratuitous and an express contract must be shown. *Shippee* v. *Shippee's Estate,* 255 Mich 35. There was no express contract here. The judgment is not contrary to law.

"The judgment is not contrary to the great weight of evidence. There was no jury, and the court was the trier of the facts, as well as the law. The credibility of the witnesses is decided by the court, and giving claimant's testimony its most favorable light, she did not sustain the burden of proof the law requires. She made no attempt to collect one item of $2,400 [$2,600 *sic?*] for over 10 years after it was due, although her family was of very limited financial ability. During the next period of claimed services and up to 1945, decedent had one or more housekeepers in addition to claimant. In 1945 (*sic* 1949) claimant took steady employment at Lapeer State Home & Training School and has worked there continuously since. These and other factors, not discussed but which appear in the record, caused the court to disbelieve claimant."

We are unable to find that the evidence in the instant case clearly preponderates in the opposite direction. The proofs do not sustain a finding of an implied contract for services rendered. In view of this conclusion, we find no occasion to pass upon the question of the bar to plaintiff's claim by the statute of limitations.

The judgment of the circuit court is affirmed, with costs to the estate.

Butzel, C. J., and Carr, Boyles, Reid, and Kelly, JJ., concurred with Bushnell, J.

Sharpe, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice Bushnell insofar as he adopts the finding of facts of the trial court. In the reasons for denying the motion for a new trial by the trial court we find the following statement:

"In 1945, decedent married the mother of claimant, and services rendered after this marriage are presumed to be gratuitous and an express contract must be shown."

The record shows that decedent married the mother of claimant's husband and not the mother of claimant. Under the facts in this case claimant was never a member of decedent's household, hence, there is no presumption that such services were rendered gratuitous.

The trial court held that the statute of limitations (CLS 1952, § 609.13 [Stat Ann 1953 Cum Supp § 27.605]) barred any claim of plaintiff prior to October 26, 1945, and relied on *In re Thompson's Estate,* 297 Mich 479, as authority for such holding. In that case the statute of limitations was invoked to bar part of Olds claim for the reason that Olds lived in decedent's home since he was 14 or 15 years of age and stood in the relationship of father and son, but Olds was permitted to receive remuneration for services rendered after he (Olds) was married and no longer was a person in the relationship of father and son.

The record clearly establishes that there was an implied contract on the part of decedent to pay for services performed. The evidence shows that full

time services were rendered from September, 1938, to 1941 and part time services were rendered from 1941 to 1946.

In *Carter* v. *Carter,* 36 Mich 207 (syllabus), we said:

"Where a person goes into the service of another upon an indefinite promise of payment for the same, and no price and no period is fixed, the bargain and service are alike continuous, and the statute of limitations does not begin to run against the claim until the service is concluded; the right of action at the close of the service is an entire right and applies to the entire service, and the employee is entitled to claim for the whole amount of all unpaid wages for all the service rendered under the agreement."

See, also, *In re Dei's Estate,* 293 Mich 651 and *Wisniewski* v. *Wisniewski's Estate,* 254 Mich 663.

The above authorities establish the principle that when services are rendered by virtue of an implied contract and with no agreement as to duration, the statute of limitations does not begin to run against the claim until the service is concluded. Because of the fact that the trial court based his conclusions, in part, upon findings of fact contrary to facts contained in the record and because the court failed to apply existing law to established facts, the judgment should be reversed and remanded for a new trial. Plaintiff may recover costs.

Dethmers, J., concurred with Sharpe, J.