*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re GERALDINE M. BENJAMIN TRUST.

| | |
|---|---|
| KATHLEEN JANSEN, Trustee of the GERALDINE M. BENJAMIN TRUST, | UNPUBLISHED<br>April 30, 2020 |
| Appellee/Cross-Appellant, | |
| v | No. 345632<br>Ogemaw Probate Court |
| DAVID ZETTLE and LUANN ZETTLE, also known as LOUANN ZETTLE, | LC No. 17-015903-DE |
| Appellants/Cross-Appellees. | |

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

PER CURIAM.

In this will and trust dispute, David and LuAnn Zettle, also referred to herein as respondents, appeal as of right the probate court's findings that a will and trust put forward by respondents were forgeries. Respondents also challenge the probate court's judgment against them in the amount of $371,955.40. In a cross-appeal, Kathleen Jansen, as trustee, appeals the probate court's decision to not award treble damages. We affirm.

## I. PERTINENT FACTS AND PROCEDURE HISTORY

The decedent, who died on December 17, 2016, has three living children, Terry Benjamin, Larry Benjamin, and LuAnn Zettle; four grandchildren, Geran and Ganae Zettle, Justin Benjamin, and Robert Redlawsk; and three great-grandchildren, Zander Benjamin, Mackenzie Benjamin, and Dallas Zettle. Terry has a longstanding relationship with Geraldine Newman, and LuAnn is married to David Zettle. This dispute begins in 2011. The decedent executed a valid will and trust on April 14, 2011 ("the April 2011 will") through attorney Christine Juarez. The documents named two of the decedent's close friends, Peter and Kathleen Jansen, as personal representatives and trustees. In July 2012, the decedent created an amendment to the April 2011 trust through the

-1-

"U.A.W. Legal Services" ("the first July 2012 amendment").[1] UAW attorney Kathy Davisson Kihata created this amendment, and the decedent executed it in Kihata's office on July 26, 2012. These events are undisputed. What occurred next is the source of tremendous dispute and was what occupied the probate court at trial.

Respondents alleged that the decedent created another will in September 2011 ("the September 2011 will"). This second will revoked the April 2011 will, named David and LuAnn as personal representatives, and gave them discretion to distribute the decedent's assets largely as they saw fit. Respondents alleged that they found the September 2011 will while searching the decedent's house after her death. The September 2011 will contains witness signatures from Lila Hewitt, Alaina Noel, and Brenda Judd. Hewitt is respondents' cousin and mother-in-law to Brenda; Brenda's husband, Mark Judd, is the decedent's great-nephew; and Noel was Ganae's best friend and unrelated to the decedent.

Additionally, respondents alleged that, later in the day on July 26, 2012, the decedent executed a *second* amendment to the April 2011 trust *after* leaving the UAW and returning home ("the second July 2012 amendment"). Respondents allege that the decedent executed this second amendment to replace the first amendment that she had created at the UAW earlier that day. This second amendment named David and LuAnn as trustees and called for a distribution that favored David, LuAnn, and their family far more than in the first amendment. This second July 2012 amendment contains witness signatures from John "Jack" Scott, Alaina Noel, and Sharon McLane. Scott was the decedent's nephew but died prior to trial, and McLane's husband is the decedent's nephew. Respondents claimed that they found the second July 2012 amendment while searching the decedent's house after her death.

Respondents' theory of the case was that the decedent executed the September 2011 will at a bank in the presence of the respective witnesses and bank employee. In July 2012 and after the decedent executed the first July 2012 amendment at the UAW, the decedent decided to change the amendment that she had just executed. She returned home and had several individuals over to her house for a social gathering. During this gathering, the decedent had the respective witnesses informally sign the second July 2012 amendment. Respondents claimed that they found the second July 2012 amendment underneath decedent's mattress, along with a signature page from the *first* July 2012 amendment. According to respondents, they had believed that this signature page applied to the accompanying *second* July 2012 amendment; therefore, they had believed the trust document they found underneath the mattress was, in fact, the *first* July 2012 amendment executed at the UAW.[2] David, as the trustee named in the second July 2012 amendment, gathered and distributed the trust assets. Respondents claimed that they did not learn until after this distribution that the trust documents they found underneath the mattress were not created at the UAW and that

---

[1] The decedent had worked for General Motors until she retired, and she therefore had access to such services.

[2] It was explained at trial that the UAW did not typically keep copies of executed documents. This meant that the original first July 2012 amendment that the decedent received would likely have been the only copy, barring the decedent making other copies herself.

the documents were in fact the *second* July 2012 amendment. They claimed that they subsequently discovered another signature page that applied to this second July 2012 amendment.

Petitioner's theory of the case was drastically different. Petitioner claimed that the September 2011 will and the second July 2012 amendment were forgeries created by respondents. Petitioners claimed that respondents were dissatisfied with the decedent's distribution scheme and wanted more assets. According to petitioner, respondents initially produced the forged second July 2012 amendment to *substitute* for the first July 2012 amendment; in other words, to act as if it was the first July 2012 amendment. However, when respondents were informed that there was an unsigned copy of the first July 2012 amendment—which was different from the one they had produced—respondents, to hide the forgery, changed their story and claimed that the one they found under the mattress was a *second* amendment completed on the same day as the first. Petitioner pointed to the "newly" discovered signature page that applied to this second July 2012 amendment. Furthermore, petitioner believed that, when assets were found to be outside the trust's reach, respondents subsequently came forward with the forged September 2011 will so that these assets could be accessed. The alleged witnesses to the forged documents were close with respondents, and some received financial compensation. This compensation was ostensibly through the will and trust but, in petitioner's belief, was in actuality payment for being witnesses to the forged documents.

The probate court ultimately sided with petitioner, concluding that respondents forged the September 2011 will and second July 2012 amendment in an attempt to defraud the beneficiaries and to gain control of the decedent's estate. It found that the alleged witnesses to these forged documents, who testified at trial, were not credible given the surrounding circumstances. It awarded $371,955.40 against respondents, which was the amount it determined was required to restore the trust and make it whole. Moreover, with the trust restored and its original terms in effect, it precluded LuAnn from receiving her share as a beneficiary under these terms. Respondents appeal the findings on forgery and, alternatively, argue that the probate court lacked authority to essentially "disinherit" LuAnn as a remedy.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

A probate court's dispositional rulings are reviewed for an abuse of discretion. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). Similarly, the award of treble damages is a discretionary matter, *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 303 Mich App 441, 449; 844 NW2d 727 (2013), and discretionary matters are reviewed for an abuse of discretion, *Greenberg v Chambers*, 262 Mich 706, 709; 247 NW 926 (1933). An abuse of discretion occurs when the probate court "chooses an outcome outside the range of reasonable and principled outcomes." *Bibi Guardianship*, 315 Mich App at 329 (quotation marks and citation omitted). We review the probate court's factual findings for clear error, which occurs "when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. at 328-329 (quotation marks and citations omitted). Finally, questions of statutory interpretation, construction, and application are reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

## B. FORGERY

Respondents first argue that the probate court clearly erred by finding that the September 2011 will and second July 2012 amendment were created by respondents with forged decedent signatures. We disagree.

For a will to be valid, it must be (1) in writing, (2) signed the testator or in the testator's name by another individual in the testator's presence and at his or her direction, and (3) signed by at least two persons within a reasonable time of witnessing either (a) the testator's signing or (b) the testator's acknowledgment of his or her signature or the will itself. MCL 700.2502(1). A trust is valid if (1) the settlor has capacity, (2) the settlor intends to create the trust, (3) there is a definite beneficiary, (4) the trustee has duties to perform, and (5) the same person is not sole trustee and sole beneficiary. MCL 700.7402(1). The plaintiff or proponent in a probate case has the burden to prove his or her case by a preponderance of the evidence. *In re Estate of Wojan*, 126 Mich App 50, 51; 337 NW2d 308 (1983). The person challenging a will has the burden to show, relevant to this appeal, fraud or revocation, MCL 700.3407(1)(c), and a trust is void if it was created by fraud, duress, or undue influence, MCL 700.7406. A testamentary document created through forgery is invalid. See *Marshick v Clayt*, 293 Mich 139, 140-141; 291 NW 252 (1940).

Ample evidence supported the probate court's conclusion that the disputed documents were forgeries created by respondents. Testimony from multiple witnesses, including the attorney who created the April 2011 will and the UAW attorney who drafted the first July 2012 amendment, demonstrated that the decedent explicitly denounced appointing immediate family from serving as either personal representatives or trustees. The decedent chose family friends, Peter and Kathleen Jansen, specifically to avoid the family conflict that has arisen in this case. She wanted independent persons who would receive no benefit from her estate. The Jansens were chosen because they were close friends who received nothing from the decedent's estate. The attorney's notes from the first July 2012 amendment demonstrated that LuAnn, who accompanied the decedent to both the consultation and signing, pushed for David to be named trustee; however, the decedent emphatically denounced this, reiterating that she did not want her children or immediate family to handle her estate.

Yet respondents would have the probate court believe that the decedent, returning home from the UAW, suddenly, and conveniently, changed her position and not only named David and LuAnn as trustees but also gave them and their family significantly more assets from the trust. Moreover, the September 2011 will, which named David and LuAnn as personal representatives, directly conflicted with the decedent's actions and statements in July 2012 at the UAW when she denounced using immediate family to handle her estate. Furthermore, as late as 2016, after Peter Jansen had passed away, the decedent told witnesses that Kathleen Jansen was to handle the decedent's estate. Such statements make little sense if the decedent had executed the documents put forth by respondents.

Additionally, a handwriting expert analyzed the signatures on the September 2011 will and the second July 2012 amendment, and the expert concluded that the signatures did not belong to

-4-

the decedent.[3]  Throughout the testimony was a consistent theme: the decedent chose the Jansens specifically because she wanted to avoid issues that could arise with her immediate family.  The probate court found it unlikely that the decedent would so suddenly and completely change her position, especially in light of the significant benefit that respondents received.  Respondents may disagree with the probate court's conclusions and weight given to the witnesses, but the credibility of witnesses and weight given to their testimony are matters for the trier of facts.  *In re Oversmith's Estate*, 340 Mich 104, 106; 64 NW2d 678 (1954).  See also MCL 2.613(C) ("[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").  Those witnesses who allegedly signed the September 2011 will and second July 2012 amendment were found to not be credible on the basis of financial compensation they received from David through the trust; inconsistent and undetailed testimony; and the fact that many witnesses claimed they never read the document(s) they allegedly signed.

Based on the evidence presented at trial, we are not left with "a definite and firm conviction that a mistake has been made" or that the probate court's decision to invalidate the documents put forth by respondents was "outside the range of reasonable and principled outcomes."  *Bibi Guardianship*, 315 Mich App at 329 (quotation marks and citations omitted).

## C.  THE JUDGMENT AWARD

Respondents argue alternatively that, even if the probate court did not clearly err in its findings on forgery, its judgment amount was improper and it lacked authority to effectively disinherit LuAnn.  We disagree.

MCL 700.7801 provides that a "trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with this article."  If the trustee "acts in *reasonable reliance* on the terms of the trust as expressed in the trust instrument," he or she "is not liable to a trust beneficiary for a breach of trust to the extent the breach resulted from the reliance."  MCL 700.7906 (emphasis added).  Furthermore, "[a] trustee who *does not know* that a trust has been revoked or amended is not liable to the settlor or the settlor's successors in interest, including the trust beneficiaries, for distributions made and other actions taken on the assumption that the trust had not been amended or revoked."  MCL 700.7602(7).

MCL 700.7901(1) provides that "[a] violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust"; moreover, the remedies for such a breach of trust are delineated:

> (2) To remedy a breach of trust that has occurred or may occur, the court may do any of the following:

---

[3] Respondents argue that such handwriting experts are unreliable and should not have been given weight by the probate court; however, they cite no case that disallows such experts.  In fact, respondents acknowledge several decisions in which such expert testimony was permitted.

(a) Compel the trustee to perform the trustee's duties.

(b) Enjoin the trustee from committing a breach of trust.

(c) Compel the trustee to redress a breach of trust by paying money, restoring property, or other means.

(d) Order a trustee to account.

(e) Appoint a special fiduciary to take possession of the trust property and administer the trust.

(f) Suspend the trustee.

(g) Remove the trustee as provided in section 7706.

(h) Reduce or deny compensation to the trustee.

(i) Subject to section 7912, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds.

(j) Order any other appropriate relief. [MCL 700.7901(2).]

When a trustee has committed a breach of trust, the trustee is liable to the trust beneficiaries affected for whichever of the following is larger:

(a) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred.

(b) The profit the trustee made by reason of the breach. [MCL 700.7902.]

Finally, MCL 700.7813(4) provides:

If a person embezzles or wrongfully converts trust property, or refuses, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brought by the current trustee, or the beneficiary of the trust for the benefit of the trust, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee.

Examining the probate court's judgment amount, we are convinced it reached the correct calculation to make the trust whole. The valid first July 2012 amendment provided for $40,000 to be given to each grandchild and great-grandchild, with the rest to be divided equally among Terry, Larry, and LuAnn. Zander, Dallas, and Mackenzie should have received $40,000 each *to be held in trust* until they reached 21 years of age. However, Zander and Mackenzie each directly received $10,000 from respondents, and Dallas directly received the full $40,000. Given that this amount

was to be *held in trust* until they reached 21 years of age and not distributed directly to them, respondents must therefore repay the $60,000 improperly distributed to them.

LuAnn received a total distribution of $226,985.30 under the forged trust's terms. Under the original trust's terms, she was in fact entitled to only $185,369.12. This number is reached by taking the trust's total value, $836,107.36,[4] subtracting the $280,000 for the seven grandchildren and great-grandchildren, and dividing by three, i.e., the number of decedent's children. The difference between these two numbers is $41,616.18, and this was the amount that LuAnn was required to return. Furthermore, no other distributions should have occurred besides (1) the $40,000 to each of the grandchildren and great-grandchildren and (2) the final distribution to the decedent's three children of any remaining assets. Accordingly, Ganae should not have received the $33,000; Larry should not have received an additional $2,341.96; and the $4,000 to "Helpers" should not have occurred. Furthermore, David was not authorized to act as trustee, which means that his $19,722.14 in fees and the $25,906 transferred to the checking account should not have been distributed. The total amount from these unauthorized distributions is $86,970.10.

Adding the $60,000 for the grandchildren and great-grandchildren, the $41,616.18 from LuAnn, and the $84,970.10 gives a total of $186,586.28 that respondents were required to return. As stated previously, the amount that LuAnn was entitled to receive under the original trust's terms was $185,369.12. The probate court decided that LuAnn had forfeited this amount through her actions. This brings the total judgment to $371,955.40, which is the amount that the probate court awarded.

We reject respondents' contentions that the probate court lacked authority to withhold the $186,586.28 that LuAnn would have been entitled to receive under the original trust's terms. The probate court found that respondents carried out a scheme to defraud the beneficiaries through forgery and to obtain significant financial benefit. If the probate court had merely ordered that the trust be made whole without any further judgment against LuAnn, this would mean that she would still have received her share under the first July 2012 amendment and April 2011 will. In other words, having lost out on her scheme for more financial gain, she would still have obtained the original benefit as if she had never attempted the scheme in the first place. As petitioner points out on appeal, this clearly provides no disincentive against respondents, and others, attempting such a scheme in the future. We cannot conclude that the probate court abused its discretion in reaching this conclusion.[5]

---

[4] Although David's Accounting provides that the total assets were $834,107.38, there is an error in the "Funds transferred into a checking account." $2,000 is missing from the total. This amount must therefore be included in the total trust value.

[5] We also reject respondents' attempts to frame the issue under statutes applicable to trustees. LuAnn was not a trustee. The probate court found that she created an invalid trust and forged the decedent's signature. Kathleen Jansen was the trustee named by the valid trust, not LuAnn.

## D. TREBLE DAMAGES

Finally, we reject petitioner's argument in her cross-appeal that the probate court abused its discretion by refusing to award treble damages.

"When interpreting a statute, [this Court] must ascertain the Legislature's intent," which is accomplished "by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Griffin v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted). If a statute is unambiguous, it must be applied as plainly written. *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 971 NW2d 584 (2018). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). MCL 600.2919a provides:

> (1) A person damaged as a result of either or both of the following *may recover* 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

This statute uses the permissive word "may" rather than a mandatory word such as "shall," which denotes that the probate court has discretion rather than an affirmative duty to award treble damages to a party. See *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508, 519; 510 NW2d 184 (1994) (discussing the generally permissive nature of the word "may"). Petitioner offers no authority demonstrating that the probate court was required to give treble damages. Petitioner's arguments essentially are that, because the probate court found conversion, it was required to award such damages. Under the statute's plain language, this is an incorrect statement of the law. Nothing *required* the probate court to award these damages. We conclude that the probate court did not abuse its discretion.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen