*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT BURGER WOOD,

        Plaintiff-Appellee,

v

CARISSA MARIE WOOD,

        Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 368189
Gladwin Circuit Court
Family Division
LC No. 22-011467-DM

Before: CAMERON, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

This divorce appeal involves the trial court's determinations regarding property division and custody. Defendant, Carissa Marie Wood, appeals as of right the trial court's judgment of divorce, challenging the division of certain marital property between her and plaintiff, Robert Burger Wood, and the award of joint legal and physical custody of the parties' two minor children. However, defendant's challenge regarding custody was waived and is otherwise unsupported by the record. Concerning the property division, the trial court's findings were not clearly erroneous, and its decision was fair and equitable under the circumstances. We therefore affirm.

## I. BACKGROUND

The parties married in 2014 and share two children. The parties built a marital home and resided there for about eight years. In August 2022, both parties filed for divorce, with defendant requesting sole physical custody (but joint legal custody) of their children. The referee held a hearing regarding temporary custody, parenting time, and child support. Among other testimony, plaintiff denied having any substance abuse issues. Plaintiff acknowledged that he went through an "EAP program," which he described as a counseling program through his employer. He also acknowledged voluntarily undergoing random alcohol testing in the year prior with "J&A Counseling." This lasted 11 weeks, and he denied having any positive or missed tests. In contrast, defendant testified that plaintiff abused both alcohol and his prescribed Adderall.

The referee entered a temporary order recommending that the parties receive joint legal and physical custody with a parenting-time schedule of alternating weeks. The referee found that there was an established custodial environment with both parties. The referee did not mention any

-1-

substance abuse issues. Defendant subsequently filed an objection to the temporary order, and the matter was set for a bench trial with the trial court. Defendant still sought sole physical custody of the minor children. Before trial, the parties stipulated to the sale of the marital residence, and that they would split the proceeds, excepting $14,000 to be set aside in escrow.

On May 24, 2023, the parties reached a tentative custody agreement. However, the next day, during a pro confesso hearing, it initially appeared that the agreement was no longer viable. Defendant wanted to add an additional condition that "both parties not consume alcohol or illegal substances" while caring for the children, but plaintiff would not agree. However, after a brief recess, defendant decided to waive the additional condition. Accordingly, plaintiff's attorney placed the agreement on the record, which included joint legal and physical custody, as well as a parenting-time schedule of alternating weeks. Defendant's counsel agreed with the accuracy of the agreement placed on the record. The trial court placed both parties under oath to avoid "wiggle room" and prevent "buyer's remorse." Under oath, both parties agreed to joint legal and physical custody, to the parenting-time schedule, and to this being in the minor children's best interests. The trial court placed its findings on the record and determined that the parties would have joint legal and physical custody with alternating parenting time. Therefore, the upcoming bench trial would address the remaining property division issues.

Before trial, defendant filed an amended trial brief that appeared to request sole physical custody and challenge the referee's findings. The brief made no mention of the custody agreement or the fact that the bench trial was supposed to only address the remaining property division issues. It also appears that defendant subpoenaed J&A Counseling's record officer for plaintiff's alcohol testing records. However, at the bench trial, neither defendant nor her counsel raised or discussed custody of the minor children; similarly, neither defendant nor her counsel attempted to introduce any evidence or witnesses from J&A Counseling. Instead, the bench trial focused on the remaining property division, which included the $14,000 in escrow.

There were two main outstanding debts to divide: a $4,000 landscaping bill, and a $1,200 bill for a Peloton bike. There was no dispute that both debts occurred during the marriage and before the divorce proceedings. The landscaping was completed for the marital home and included a terrace, sea wall, and retaining wall. The landscaping cost about $65,000, and $4,000 remained to be paid. The parties disputed the nature of the Peloton bike. According to defendant, it had been a birthday gift; according to plaintiff, it had been a family gift. Plaintiff desired for the landscaping and Peloton bike to be paid off with the $14,000 in escrow. Defendant desired for these debts to be paid off by plaintiff.

There was also no dispute that plaintiff had solely made the marital residence's mortgage payments throughout the divorce proceedings. Plaintiff testified that he had paid about $15,600 for all of the marital residence expenses during this time, about $13,400 of which was for mortgage payments. Defendant never disputed these amounts. Plaintiff desired to be reimbursed from defendant for half of these payments. However, defendant testified that when she and plaintiff first moved into the marital residence, she used about $11,000 from one of her retirement accounts to cover family expenses. She desired to be reimbursed from plaintiff for this amount. In contrast, according to plaintiff, defendant never used her retirement accounts in such a manner.

The trial court issued an oral ruling from the bench. It first took judicial notice of the prior custody agreement stipulated to by the parties. Regarding the property division, the trial court lamented the lack of evidence and information provided by the parties. The court stated that it did not "have much to go on." The court then determined that the $14,000 in escrow would be used to pay off the landscaping and Peloton debts. The court determined that while the remaining amount would ordinarily be split between the parties, defendant's share should be used to reimburse plaintiff for half of the mortgage payments:

> So as for the mortgage payments that were paid between the separation and the sale of the home. The parties are equally responsible for those mortgage payments. You had a marital asset, it had marital debt, you both benefitted from the sale of that marital asset, and so you have to take the marital debt along with it. So you're equally responsible for those mortgage payments, that's an easily ascertainable number. And that will include the home insurance as well, which was part of that mortgage payment evidently held in escrow. And so you're equally responsible up to the balance that's remaining from the equity.

The trial court also determined that each party would keep their respective retirement accounts. It reasoned as follows:

> You [defendant] don't get to come back now and ask for retirement benefits that you spent as a marital asset ten years ago. In this case nine years ago. So you just simply don't—you can't do that. I have no numbers. I don't know what your retirement benefits are. I don't know how much you spent. I don't know when to—when it was spent. I'm—I'm at a loss. In part, that's my frustration. But also you just don't get to do that. And [plaintiff] waived his right to the wife's retirement benefits back in July of 2022. [Defendant] essentially waived her rights in November of 2022,[1] and there have not been any motions brought. This isn't some big surprise that's been sprung. It's been months, and months, and months, and two other attorneys and no motions have been brought, no objections made. And then the testimony here today, each will keep their own retirement benefits.

Once again, neither defendant nor her counsel raised any custody or evidentiary issues. The trial court entered the judgment of divorce reflecting the custody agreement and oral ruling. Defendant now appeals.

## II. ANALYSIS

### A. CUSTODY

Defendant contends the trial court erred and violated her right to due process by preventing her from presenting at the bench trial newly-discovered evidence of plaintiff's alleged abuse of

---

[1] The record includes a mediation agreement from December 2022 stating in relevant part that the parties would keep their own retirement accounts, but it was signed only by the parties' respective counsels, not by either party individually.

amphetamines. By extension, defendant contends that because excluding the newly-discovered evidence was not in the minor children's best interests, the trial court necessarily failed to properly address the best-interest factors. Defendant maintains that such evidence should have warranted her receiving sole legal and physical custody. We conclude that this argument is unsupported by the record and, in any event, was waived by the parties' pretrial stipulated custody agreement.

As an initial matter, defendant failed to raise these issues in the trial court, thereby leaving them unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "[O]rdinarily in civil cases, we would decline to reach an unpreserved claim on appeal under our raise-or-waive jurisprudence." *Quint v Quint*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 368002); slip op at 7. However, "judicial prudence favors applying the plain-error standard to an unpreserved claim in a child-custody proceeding." *Id*. A party must establish four elements for reversal under plain-error review:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. (citation omitted).]

The Due Process Clauses of the United States and Michigan Constitutions guarantee that a person receive due process of law. US Const, Am XIV; Const 1963, art 1, § 17. As relevant in divorce cases, before awarding custody, the trial court must first determine if the child has an established custodial environment with either of the parents. *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). "[I]f the trial court determines that an established custodial environment exists with either [one] . . . or both parties, the party seeking to change that established custodial environment must demonstrate that the change is in the best interests of the children by clear and convincing evidence." *Id*. at 62-63. If the requested change does not affect the child's custodial environment, "the proponent of the change need only demonstrate by a preponderance of the evidence that the requested change is in the child's best interests." *Marik v Marik (On Remand)*, 325 Mich App 353, 362; 925 NW2d 885 (2018). In evaluating a child's best interests, courts must analyze the best-interest factors set forth in MCL 722.23. *Kessler*, 295 Mich App at 63. There are 12 factors, and a trial court must examine the "sum total" of these factors. See MCL 722.23(a) to MCL 722.23(l).

Defendant does not challenge any of these 12 factors or the referee's determination that there was an established custodial environment with both parties. Instead, she argues that she was prevented from presenting evidence at the bench trial. However, defendant explicitly waived custody issues for purposes of the bench trial. "A waiver is a voluntary and intentional abandonment of a known right." *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021) (quotation marks and citation omitted). As we have previously explained:

> "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." To allow a party to assign error on appeal to something that he or she deemed proper in the lower court would

be to permit that party to harbor error as an appellate parachute. [*Id*. (citation omitted).]

Here, defendant entered into the custody agreement before the bench trial. Plaintiff's counsel placed their agreement on the record, which included joint legal and physical custody over the children. Defendant's counsel agreed with the accuracy of this agreement, and defendant, under oath, agreed to joint legal and physical custody. Moreover, defendant agreed to this being in the children's best interests. The trial court entered the agreement into the record. This left only certain property issues to be addressed; custody was no longer an issue for the bench trial. This appears to be a situation in which defendant has had "buyer's remorse," but the trial court's actions were taken to explicitly prevent this.

Notably, the record is devoid of any attempt by defendant to subsequently challenge the custody agreement. Furthermore, at the bench trial, defendant did not make any attempt to either raise custody or to introduce newly-discovered evidence of plaintiff's alleged substance abuse. In fact, at the outset of the bench trial, defendant's counsel dismissed what appears to have been a witness subpoenaed to testify about plaintiff's alleged substance abuse. And although defendant testified extensively at trial concerning the parties' property division, neither she nor her counsel made any substantive reference whatsoever to any newly-discovered evidence, custody, or the children's best interests. Contrary to defendant's contention here, nothing shows that the trial court ever in any way "failed to allow" defendant to present any evidence or testimony at trial.

Accordingly, defendant's argument is unsupported by the record. Nevertheless, this is a situation in which a party clearly, voluntarily, and intentionally abandoned a known right, which in this case was defendant's right to litigate custody at the bench trial. In light of this waiver and because the record gives no support to defendant's argument that the trial court prevented her from introducing newly-discovered evidence, defendant has failed to persuade us of any plain error.

## B. DIVISION OF PROPERTY

Defendant contends she should have received the entirety of the $14,000 from selling the marital home, as an offset to the depletion of her retirement account.[2] She also contends that the

---

[2] Defendant's reply brief also asserts that the court erred regarding the parties' retirement accounts "when it sought to enforce a mediation agreement [1] based on a mediation that neither of the parties attended and . . . [2] that was not signed by the parties." We acknowledge that parties must generally sign a mediation settlement for it to be binding. See MCR 3.216(H)(8). Nevertheless, this issue is not properly before this Court because it was raised for the first time in a reply brief. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Further, while the trial court did apparently reference the mediation agreement, it's decision regarding the retirement accounts was largely on the basis of the parties' trial testimony and defendant's failure to corroborate expenses from her retirement account she alleged occurred during the marriage. And defendant makes no effort to explain what alternative division of the parties' retirement accounts would have been proper. To the extent defendant raises this issue as

trial court appeared to punish her by improperly relying on perceived marital misconduct. We disagree and conclude that the trial court's findings on this issue were not clearly erroneous, and its decision was fair and equitable under the circumstances.

We review for clear error the trial court's factual findings on the marital property's division. *Elahham v Al-Jabban*, 319 Mich App 112, 120; 899 NW2d 768 (2017). Clear error occurs when "we are left with a definite and firm conviction that a mistake has been made." *Id*. at 120-121 (quotation marks and citation omitted). "If the findings of fact are upheld, [we] must decide whether the dispositive ruling was fair and equitable in light of those facts," and "[w]e will uphold the trial court's ruling unless this Court is left with the firm conviction that the division was inequitable." *Id*. at 121 (quotation marks and citation omitted; first alteration in original).

"The overarching goal of a trial court's property distribution in a divorce action is equity." *Id*. Although the trial court is not required to divide marital property equally, the property "must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs." *Id*. (quotation marks and citation omitted). The trial court must consider the following factors if they are relevant to the case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Id*. (quotation marks and citation omitted).]

Furthermore, a trial court may consider any additional relevant factors. *Id*. Although the trial court is required to consider "all relevant factors," it is prohibited from giving "disproportionate weight to any one circumstance." *Id*. at 122 (quotation marks and citation omitted). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201.

As an initial matter, defendant's brief on appeal provides just one paragraph, devoid of any authority, arguing that the trial court erred by not awarding her the entire $14,000 in escrow as a set-off for her alleged retirement account depletion. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). Nevertheless, the trial court did not err on this issue.

In the present case, there was no dispute that the landscaping and Peloton bike debts constituted marital debt. Both parties benefited from the landscaping because this was done to improve the marital residence. Additionally, defendant's own testimony was that the Peloton bike was a birthday gift, suggesting that she used and benefited from it. These were not debts that

---

an alternate ground that she should have been reimbursed for the alleged depletion of her retirement account early during the marriage, this is sufficiently addressed in our analysis herein.

plaintiff incurred on his own or that he solely benefited from. The trial court utilized the $14,000 balance from the sale of the marital residence in part to pay off these debts.

There also was no dispute that plaintiff solely made mortgage payments on the marital home throughout the divorce proceedings. The trial court determined that because defendant was responsible for half of these payments, plaintiff should be reimbursed. To pay for this reimbursement, the trial court simply ordered that defendant's share of the remaining $14,000 be absorbed by plaintiff. This was actually less than what defendant owed for reimbursement, which made this a boon to her. Ultimately, it was reasonable to take a portion of the remaining home-sale proceeds, the $14,000 in escrow, to pay off these remaining marital debts.

Likewise, in light of the home sale and resultant benefit to defendant, it was also reasonable to require her to pay her share of the mortgage payments. We believe that, in light of these facts, the trial court's findings were not clearly erroneous, and its award was fair and equitable in light of the circumstances.

Although defendant argues that the $14,000 should have been used to offset the depletion of her retirement account, this argument relies on her testimony at the bench trial. She provided sparse information and no financial records. Notably, when deciding on division of the parties' retirement accounts, the trial court explicitly stated that it was frustrated with defendant's lack of evidence and documentation to support any depletion from her retirement account during the marriage. Moreover, plaintiff denied that defendant ever used her retirement account to pay for expenses during the marriage. In other words, defendant essentially argues that the trial court should have credited her testimony and weighted it more in her favor when determining how to divide the $14,000. However, "the credibility of witnesses and the weight to be given their testimony are proper matters for determination by the trier of facts." *In re Oversmith's Estate*, 340 Mich 104, 106; 64 NW2d 678 (1954). See also MCL 2.613(C). Accordingly, such matters were for the trial court to decide as the trier of fact, not for this Court to second guess on appeal.

Defendant also contends that the trial court focused too much on defendant's perceived marital misconduct when she brought a significant other around the minor children during a camping trip. According to defendant, the trial court appeared to punish her for this conduct. The record belies defendant's contentions. Nowhere in the trial court's findings, or during the entire bench trial, is there any reference to this conduct. This conduct was referenced and relied on by the referee when making its custody recommendation, but this had nothing to do with the property division at the bench trial. The trial court did not punish defendant; it chose to use the $14,000 to pay off marital debt and to reimburse plaintiff for defendant's share of the mortgage expenses.

Affirmed.

/s/ Thomas C. Cameron
/s/ Noah P. Hood
/s/ Adrienne N. Young